1  CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
   Carolyn.Luedtke@mto.com
2  TERRA CASTILLO LAUGHTON (State Bar No. 321683)
   Terra.Laughton@mto.com
3  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
4  San Francisco, California 94105-3089
   Telephone:    (415) 512-4000
5  Facsimile:    (415) 512-4077

6  GLENN D. POMERANTZ (State Bar No. 112503)
   Glenn.Pomerantz@mto.com
7  HAILYN J. CHEN (State Bar No. 237436)
   Hailyn.Chen@mto.com
8  LAUREN M. HARDING (State Bar No. 308029)
   Lauren.Harding@mto.com
9  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, Fiftieth Floor
10 Los Angeles, California 90071-3426
   Telephone:    (213) 683-9100
11 Facsimile:    (213) 687-3702

12 *Attorneys for Defendants The National Collegiate*
   *Athletic Association and The Board of Governors*
13 *of the National Collegiate Athletic Association*

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                       SAN JOSE DIVISION

17

18 | ERIN ALDRICH, LONDA BEVINS, | Case No. 5:20-cv-01733-EJD |
   | JESSICA JOHNSON, AND BEATA | |
19 | CORCORAN, individually and on behalf of | **DEFENDANTS THE NATIONAL** |
   | all others similarly situated, | **COLLEGIATE ATHLETIC** |
20 | | **ASSOCIATION AND THE BOARD OF** |
   | | **GOVERNORS OF THE NATIONAL** |
21 |                Plaintiffs, | **COLLEGIATE ATHLETIC** |
   | | **ASSOCIATION'S MOTION TO DISMISS** |
22 |        vs. | **AND/OR TO STRIKE THE FIRST** |
   | | **AMENDED COMPLAINT** |
23 | NATIONAL COLLEGIATE ATHLETIC | |
   | ASSOCIATION, THE BOARD OF | Filed Concurrently with Request for |
24 | GOVERNORS OF THE NATIONAL | Application of the Incorporation by Reference |
   | COLLEGIATE ATHLETIC ASSOCIATION, | Doctrine or Judicial Notice and Affidavit of |
   | and JOHN REMBAO, | Jacqueline Campbell |
25 | | |
   |                Defendants. | Judge:   Hon. Edward J. Davila |
26 | | Date:    September 3, 2020 |
   | | Time:    9:00 a.m. |
27 | | Crtrm.:  4 |

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.      INTRODUCTION ..............................................................................................................1

II.     FACTUAL BACKGROUND ............................................................................................3

      A.     The NCAA, Its Board of Governors, and Its Member Institutions ......................3

      B.     Plaintiffs Aldrich, Bevins, Johnson, and Corcoran ..............................................4

III.    ARGUMENT .....................................................................................................................5

      A.     This Court Lacks Personal Jurisdiction Over the NCAA and Its Board ...............5

      B.     Venue in This Court Is Improper for the NCAA and Its Board ............................8

      C.     The Board Is Not an Entity with the Capacity to Be Sued ....................................9

      D.     Plaintiffs Lack Standing to Seek Injunctive Relief and Corcoran Lacks Standing to Seek Any Relief .................................................................................9

      E.     Plaintiffs' Claims—Brought 20 Years After Any Alleged Misconduct— Must Be Dismissed As Untimely ........................................................................10

            1.    Choice of Law ..........................................................................................11

                  (a)    Limitations Periods ......................................................................11

                  (b)    California Law Applies to the Discovery Rule ..............................12

                  (c)    Indiana and Texas Law Apply to Equitable Estoppel/Fraudulent Concealment .......................................12

            2.    The Discovery Rule Does Not Revive Aldrich's Claims ..........................12

            3.    The Statute of Limitations Is Not Tolled for Bevins and Johnson ............14

            4.    A Federal Court Sitting in Diversity Should Not Create a New Equitable Exception to Excuse Plaintiffs' Untimely Claims ....................15

      F.     The NCAA and Its Board Do Not Owe a Legally Actionable Duty As Required to Support Plaintiffs' Negligence-Based Claims ...................................16

            1.    Choice of Law ..........................................................................................16

             2.    Plaintiffs Fail to Establish the Required Duty to Plaintiffs .......................18

                   (a)    The NCAA and Its Board Owe No Legally Cognizable Duty of Care to Plaintiffs .................................................................19

(b)     The NCAA and Its Board Did Not Gratuitously or Voluntarily Assume a Duty ...............................................20

(c)     The NCAA Does Not Owe a Fiduciary Duty to Plaintiffs..............22

(d)     The NCAA Does Not Owe a Duty to Support Plaintiffs' "Negligent Misrepresentation/Omission" Claim ............................23

G.     Plaintiffs' Contract and Third Party Beneficiary Claims Fail...................................23

    1.     Choice of Law ...............................................................................23

         (a)     California Law Applies to the Issue of Contract Validity...............23

         (b)     Arizona, Texas, and New Jersey Law Applies to the Third-Party Beneficiary Claim ...................................................................23

    2.     Plaintiffs' Contract-Related Claims Must Be Dismissed ............................24

         (a)     Breach of Express/Implied Contract ................................................24

         (b)     Breach of Contract as Third-Party Beneficiaries ............................26

H.     Plaintiffs' Claims for Vicarious Tort Liability Fail Because Rembao Was Not the NCAA's Agent ........................................................................27

    1.     Choice of Law ...............................................................................27

    2.     Respondeat Superior Is Inapplicable Because the Member Institutions, Not the NCAA, Employed and Controlled Rembao ................27

    3.     Respondeat Superior Is Also Inapplicable Because Sexual Abuse Is Outside Rembao's Scope of Employment as a Coach ................................28

    4.     Plaintiffs' Ratification Theory Fails...........................................................29

NCAA & BOARD'S MOTION TO DISMISS AND/OR TO STRIKE THE FAC

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Amiri v. DynCorp International, Inc.,
    No. 14-CV-03333 SC, 2015 WL 166910 (N.D. Cal. Jan. 13, 2015) ...........................................6

Arno v. Club Med Inc.,
    22 F.3d 1464 (9th Cir. 1994).................................................................................................27

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .........................................................................................................5, 30

B.C. v. Plumas Unified School District,
    192 F.3d 1260 (9th Cir. 1999)...............................................................................................10

BNSF Railway Co. v. Tyrrell,
    137 S. Ct. 1549 (2017) ...........................................................................................................6

Bradley v. National Collegiate Athletic Ass'n,
    249 F. Supp. 3d 149 (D.D.C. 2017) .......................................................................................26

Bristol-Myers Squibb Co. v. Superior Court,
    137 S. Ct. 1773 (2017) ...................................................................................................5, 6, 8

Castaldi v. Signature Retail Services, Inc.,
    No. 15-cv-00737-JSC, 2016 WL 74640 (N.D. Cal. Jan. 7, 2016) ...........................................23

In re Cathode Ray Tube (CRT) Antitrust Litigation,
    27 F. Supp. 3d 1002 (N.D. Cal. 2014) ....................................................................................7

Clapper v. Amnesty International USA,
    568 U.S. 398 (2013) .............................................................................................................10

Cover v. Windsor Surry Co.,
    No. 14-cv-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ..............................17, 18

Cox v. Government Employees Ins. Co.,
    126 F.2d 254 (6th Cir. 1942).................................................................................................15

CRS Recovery, Inc. v. Laxton,
    600 F.3d 1138 (9th Cir. 2010)...............................................................................................11

Daimler AG v. Bauman,
    571 U.S. 117 (2014) ...........................................................................................................5, 6

Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen,
    387 U.S. 556 (1967) ...............................................................................................................8

Frezza v. Google Inc.,
    No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013)................................17

G&G Productions LLC v. Rusic,
    902 F.3d 940 (9th Cir. 2018)..................................................................................................11, 12

General Building Contractors Ass'n, Inc. v. Pennsylvania,
    458 U.S. 375 (1982) ........................................................................................................................27

Guaranty Trust Co. of N.Y. v. York,
    326 U.S. 99 (1945) ..........................................................................................................................16

Hairston v. Pacific 10 Conference,
    101 F.3d 1315 (9th Cir. 1996)........................................................................................................27

Hall v. National Collegiate Athletic Ass'n,
    985 F. Supp. 782 (N.D. Ill. 1997) ................................................................................................25

Hatfield v. Halifax PLC,
    564 F.3d 1177 (9th Cir. 2009)........................................................................................................12

Heslep v. Americans for African Adoption, Inc.,
    890 F. Supp. 2d 671 (N.D.W. Va. 2012)........................................................................................9

Imageline, Inc. v. CafePress.com, Inc.,
    No. CV 10-9794 PSG (MANx), 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011)........................28

Knelman v. Middlebury College,
    898 F. Supp. 2d 697 (D. Vt. 2012) ..............................................................................................26

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ........................................................................................................................10

Mavrix Photo, Inc. v. Brand Technologies, Inc.,
    647 F.3d 1218 (9th Cir. 2011).........................................................................................................5

Mazza v. American Honda Motor Co.,
    666 F.3d 581 (9th Cir. 2012)..............................................................................................16, 17, 18

Mehr v. Féderation Internationale de Football Ass'n,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) .........................................................................................6

Ortiz v. Georgia Pacific,
    973 F. Supp. 2d 1162 (E.D. Cal. 2013) ........................................................................................30

Pokorny v. Quixtar, Inc.,
    601 F.3d 987 (9th Cir. 2010)..........................................................................................................23

Rivera v. Peri & Sons Farms, Inc.,
    735 F.3d 892 (9th Cir. 2013)..........................................................................................................11

Roche Diagnostics Corp. v. Binson's Hospital Supplies, Inc.,
    No. 1:17-cv-00949-LJM-DML, 2017 WL 4123050 (S.D. Ind. Sept. 18, 2017).......................23

Rosenbaum v. Seybold,
    No. 1:06-CV-352-TS, 2008 WL 513205 (N.D. Ind. Feb. 22, 2008)........................................16

Siegler v. Sorrento Therapeutics, Inc.,
    No. 3:18-cv-01681-GPC-NLS, 2019 WL 581719 (S.D. Cal. Feb. 13, 2019))...........................9

Spokeo, Inc. v. Robins,
    136 S. Ct. 1540 (2016) ......................................................................................................10

Theta Chi Fraternity, Inc. v. Leland Stanford Junior University,
    212 F. Supp. 3d 816 (N.D. Cal. 2016) .................................................................................9

Walden v. Fiore,
    571 U.S. 277 (2014) ......................................................................................................7, 8

Walsh v. Kindred Healthcare,
    798 F. Supp. 2d 1073 (N.D. Cal. 2011) ..............................................................................30

In re Western States Wholesale Natural Gas Antitrust Litigation,
    715 F.3d 716 (9th Cir. 2013).............................................................................................7

Wistron Corp. v. Phillip M. Adams & Associates, LLC,
    No. C-10-4458 EMC, 2011 WL 4079231 (N.D. Cal. Sept. 12, 2011)......................................30

**STATE CASES**

Acoustics, Inc. v. Trepte Construction Co.,
    14 Cal. App. 3d 887 (1971)................................................................................................24

Anderson v. Fay Improvement Co.,
    134 Cal. App. 2d 738 (1955)..............................................................................................29

Araiza v. U.S. West Business Resources, Inc.,
    183 Ariz. 448 (Ct. App. 1995) ...........................................................................................26

Baptist v. Robinson,
    143 Cal. App. 4th 151 (2006).........................................................................................29, 30

Barenborg v. Sigma Alpha Epsilon Fraternity,
    33 Cal. App. 5th 70 (2019)...........................................................................................28, 30

Beech Aircraft Corp. v. Superior Court,
    61 Cal. App. 3d 501 (1976).................................................................................................11

Bilinsco Inc. v. Harris County Appraisal District,
    321 S.W.3d 648 (Tex. Ct. App. 2010) .................................................................................15

<u>Binder v. Aetna Life Insurance Co.</u>,
   75 Cal. App. 4th 832 (1999)......................................................................................24

<u>Binder v. Benchwarmers Sports Lounge</u>,
   833 N.E.2d 70 (Ind. Ct. App. 2005)..........................................................................15

<u>Borderlon v. Peck</u>,
   661 S.W.2d 907 (Tex. 1983)....................................................................................15

<u>City of Houston v. Williams</u>,
   353 S.W.3d 128 (Tex. 2011)....................................................................................26

<u>Cline v. Homuth</u>,
   235 Cal. App. 4th 699 (2015)..................................................................................24

<u>Cossman v. DaimlerChrysler Corp.</u>,
   108 Cal. App. 4th 370 (2003)..................................................................................12

<u>Cruz v. HomeBase</u>,
   83 Cal. App. 4th 160 (2000)....................................................................................30

<u>Doe v. Roe</u>,
   191 Ariz. 313 (1998)..............................................................................................14

<u>Emery v. Visa International Service Ass'n</u>,
   95 Cal. App. 4th 952 (2002)....................................................................................29

<u>In re Estate of Neu</u>,
   588 N.E.2d 567 (Ind. Ct. App. 1992)......................................................................22

<u>Farmers Insurance Group v. County of Santa Clara</u>,
   11 Cal. 4th 992 (1995)............................................................................................28

<u>Fox v. Ethicon Endo-Surgery, Inc.</u>,
   35 Cal. 4th 797 (2005)............................................................................................12

<u>Frontier Oil Corp. v. RLI Insurance Co.</u>,
   153 Cal. App. 4th 1436 (2007)................................................................................24

<u>Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins</u>,
   926 S.W.2d 287 (Tex. 1996)....................................................................................18

<u>Goodwin v. Yeakle's Sports Bar & Grill, Inc.</u>,
   62 N.E.3d 384 (Ind. 2016)......................................................................................19

<u>Harmon v. Fisher</u>,
   56 N.E.3d 95 (Ind. Ct. App. 2016)..........................................................................23

<u>Huntington Mortgage Co. v. DeBrota</u>,
   703 N.E.2d 160 (Ind. Ct. App. 1998)......................................................................22

John R. v. Oakland Unified School District,
    48 Cal. 3d 438 (1989)...........................................................................28, 29

Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,
    962 S.W.2d 507 (Tex. 1998) ...........................................................................15

Jolly v. Eli Lilly & Co.,
    44 Cal. 3d 1103 (1988) ...............................................................................12, 13

Kearney v. Salomon Smith Barney, Inc.,
    39 Cal. 4th 95 (2006)...................................................................................17, 18

Lanni v. National Collegiate Athletic Ass'n,
    42 N.E.3d 542 (Ind. Ct. App. 2015).................................................................21

Lisa M. v. Henry Mayo Newhall Memorial Hospital,
    12 Cal. 4th 291 (1995)......................................................................................29

Mark K. v. Roman Catholic Archbishop,
    67 Cal. App. 4th 603 (1998)..............................................................................13

Marshall v. First Baptist Church of Houston,
    949 S.W.2d 504 (Tex. Ct. App. 1997) .............................................................15

Meisenhelder v. Zipp Express, Inc.,
    788 N.E.2d 924 (Ind. Ct. App. 2003)...............................................................15

Neal v. IAB Financial Bank,
    68 N.E.3d 1114 (Ind. Ct. App. 2017)...............................................................19

Northeastern Rural Electric Membership Corp. v. Wabash Valley Power Ass'n,
    Inc.,
    56 N.E.3d 38 (Ind. Ct. App. 2016)...................................................................14

Passmore v. Multi-Management Services, Inc.,
    810 N.E.2d 1022 (Ind. 2004)............................................................................23

Patterson v. Domino's Pizza, LLC,
    60 Cal. 4th 474 (2014)................................................................................27, 28

Quiroz v. ALCOA Inc.,
    243 Ariz. 560 (2018) ........................................................................................18

Rakestraw v. Rodrigues,
    8 Cal. 3d 67 (1972)...........................................................................................29

Robinson v. Vivirito,
    217 N.J. 199 (2014)..........................................................................................18

NCAA & BOARD'S MOTION TO DISMISS AND/OR TO STRIKE THE FAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ross v. Lowitz,
    222 N.J. 494 (2015)................................................................................26

Rowland v. Christian,
    69 Cal. 2d 108 (1968)............................................................................17

S. G. Borello & Sons, Inc. v. Department of Industrial Relations,
    48 Cal. 3d 341 (1989)............................................................................27

Schmitz v. National Collegiate Athletic Ass'n,
    67 N.E.3d 852 (Ohio Ct. App. 2016) ....................................................22

Smith v. Delta Tau Delta, Inc.,
    9 N.E.3d 154 (Ind. 2014)................................................................15, 21

Wabash Grain, Inc. v. Smith,
    700 N.E.2d 234 (Ind. Ct. App. 1998)...................................................15

Webb v. Jarvis,
    575 N.E.2d 992 (Ind. 1991)............................................................17, 19

Wickham v. Southland Corp.,
    168 Cal. App. 3d 49 (1985)...................................................................27

Williams v. Cingular Wireless,
    809 N.E.2d 473 (Ind. Ct. App. 2004)...................................................19

Yost v. Wabash College,
    3 N.E.3d 509 (Ind. 2014)............................................................ *passim*

**FEDERAL STATUTES**

28 U.S.C. § 1391(c)(2) ...................................................................................8

28 U.S.C. § 1406 ............................................................................................8

28 U.S.C. § 1406(a).........................................................................................8

Federal Rule of Civil Procedure 12(b)(2) ..................................................1, 5

Federal Rule of Civil Procedure 12(b)(3) ..................................................1, 8

Federal Rule of Civil Procedure 12(b)(6) ................................................1, 16

Federal Rule of Civil Procedure 17(b) ..................................................1, 2, 9

Federal Rule of Civil Procedure 17(b)(3) .....................................................9

Federal Rule of Civil Procedure 23(b)(2) ...................................................10

**STATE STATUTES**

California Civil Code § 1646 ...................................................................................23, 24

California Code of Civil Procedure § 361 ...................................................................11

California Corporations Code § 105 .............................................................................9

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 142 ........................................................12

Restatement (Second) of Torts § 315 ...........................................................................19

   **PLEASE TAKE NOTICE** that on September 3, 2020, at 9:00 a.m., before the Honorable Edward J. Davila in Courtroom 4, 280 South First Street, San Jose, CA 95113, Defendants the National Collegiate Athletic Association ("NCAA") and its Board of Governors ("the Board") will move for an order dismissing all claims against them brought by Plaintiffs Erin Aldrich, Londa Bevins, Jessica Johnson, and Beata Corcoran ("Plaintiffs") in their First Amended Complaint (ECF No. 54) ("Complaint" or "FAC"). The NCAA and the Board also move, alternatively, to strike all claims against the Board, all claims for injunctive relief, and all of Corcoran's claims. This motion is based on this Notice, the following Memorandum of Points and Authorities, the Request for Application of the Incorporation by Reference Doctrine or Judicial Notice ("RJN"), the Affidavit of Jacqueline Campbell ("Campbell Aff."), all papers on file in this matter, and any authority or argument as may be presented in reply and at any hearing.

<b><u>STATEMENT OF RELIEF SOUGHT</u></b>

   The NCAA and its Board seek an order under Rule 12(b) and/or 12(f) dismissing or striking all thirteen claims for lack of jurisdiction under Rule 12(b)(1) and 12(b)(2), improper venue under Rule 12(b)(3), failure to name an entity with the capacity to be sued under Rule 17(b), lack of Article III standing, and failure to state a claim under Rule 12(b)(6).

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

**I.     INTRODUCTION**

   This is a case originally brought by three former student-athletes (Aldrich, Bevins, and Johnson) who twenty years ago participated in track and field at the University of Arizona ("UArizona") and the University of Texas at Austin ("UT") and allege that their coach at UArizona and UT, Defendant John Rembao, sexually abused them. In response to the NCAA's motion to strike the injunctive relief claims in the original complaint for lack of standing, Plaintiffs amended the Complaint to add Plaintiff Corcoran with a bare, two sentence allegation that she is currently a member of Princeton's rowing team. Corcoran does not allege any connection to Rembao, any abuse, or any harm whatsoever. Together, Plaintiffs bring thirteen claims against the NCAA and two claims against its Board, in which they argue that the NCAA should have adopted policies to prevent the alleged abuse by Rembao and that the failure to do so

1   was negligent, a breach of contract, and that the NCAA is vicariously liable for Rembao's sexual

2   abuse.  Plaintiffs purport to represent two nationwide classes—(1) all student-athletes who

3   participated in any NCAA sport from 1992 to the present, a class of breathtaking scope and size,

4   and (2) all NCAA student-athletes ever coached by Rembao.

5          The NCAA is a voluntary unincorporated association created by member colleges and

6   universities across the country to administer intercollegiate athletics.  The NCAA has the specific

7   powers its members have vested in it.  In defining the NCAA's legislative powers, the NCAA's

8   members have explicitly retained for themselves the direct responsibility for the health and safety

9   of their student-athletes.  The NCAA's role is to provide support to its members in carrying out

10  that retained responsibility.  This support takes many forms, such as model policies, educational

11  resources, and forums for members to share approaches.  And, consistent with the member

12  institutions retaining responsibility for student-athlete health and safety, the Board has adopted a

13  resolution directing athletic departments to follow campus-wide policies and local and state law

14  related to sexual abuse.

15         Colleges and universities across the country recognize that sexual abuse on their campuses

16  is a serious problem, and the NCAA has supported its member institutions with resources those

17  members can use on their respective campuses to combat sexual abuse.  This case is not about

18  whether the NCAA opposes sexual abuse and works to support its member institutions in

19  eradicating it—it does.  Instead, this case is about what the NCAA's legal duty is to take action

20  with respect to sexual abuse on campuses nationwide and, more specifically, what the NCAA's

21  legal responsibility is for the alleged sexual abuse (all outside California) by one track coach

22  twenty years ago.  The NCAA respectfully submits the Complaint is flawed as a matter of law and

23  that all claims against the NCAA and its Board be dismissed and/or stricken.

24         To begin, the Complaint suffers from four global deficiencies.  First, this Court lacks

25  personal jurisdiction and this is an improper venue because the NCAA is a resident of Indiana and

26  not California, and Plaintiffs' claims against the NCAA or its Board are not alleged to have arisen

27  from events in California.  Second, the Board is not a proper defendant under Federal Rule of

28  Civil Procedure 17(b) and California law.  Third, Plaintiffs lack standing to pursue their claims for

1    injunctive relief because three of the four are not current student-athletes and the current student-

2    athlete does not allege a requisite concrete, particularized harm (and thus lacks standing to bring

3    any claim).  Finally, the former student-athletes' claims are untimely and no exception to the

4    statutes of limitations applies.

5        If the Court gets past these global deficiencies, which the NCAA respectfully suggests it

6    should not, all claims are deficient as a matter of law.  The direct negligence-based claims (Counts

7    I-IV) should be dismissed because the NCAA does not owe a related legally cognizable duty to

8    Plaintiffs.  The contract-based claims (Counts V-VII) fail because there is no enforceable contract

9    between Plaintiffs and the NCAA, nor were Plaintiffs third-party beneficiaries of any contract

10   between the NCAA and its members.  Finally, the indirect claims (Counts VIII-XIII) that allege

11   the NCAA is vicariously liable for Rembao's conduct are deficient because Rembao was not the

12   NCAA's agent and even if he was, the alleged abuse was outside the scope of his employment.

13   **II.    FACTUAL BACKGROUND**

14       **A.    The NCAA, Its Board of Governors, and Its Member Institutions**

15       Colleges and universities created the NCAA as a voluntary unincorporated association,

16   delegating to it the power to administer intercollegiate athletic competition.  The NCAA is based

17   in Indiana.  FAC ¶ 26.  Nearly 1,100 schools across the country are members.  Id. ¶ 86.  A Board

18   of Governors, comprised of Presidents and Chancellors from schools of various sizes and regions

19   plus five independent Board members, manages the NCAA.  Id. ¶ 27.

20       The participating colleges and universities ("the member institutions") adopted the NCAA

21   Constitution, which "defines the NCAA's purposes and fundamental policies."  FAC ¶ 88.  The

22   NCAA only takes action where its member institutions have delegated it responsibility, such as

23   setting rules governing the recruitment of athletes, the rules of competition, how postseason

24   competition will work, etc.  The member institutions have explicitly not delegated responsibility

25   for health and safety or the student-athlete/coach relationship.  Specifically, the Constitution

26   provides it "is the responsibility of each member institution to protect the health of, and provide a

27   safe environment for, each of its participating student-athletes."  Id. ¶ 89 (citing NCAA Const., art.

28   2, § 2.2.3, emphasis added).  Similarly, it provides it "is the responsibility of each member

1   <u>institution</u> to establish and maintain an environment that fosters positive relationship between the

2   student-athlete and coach." <u>Id</u>. ¶ 89 (citing NCAA Const., art. 2, § 2.2.4, emphasis added).

3       Consistent with its Constitution, the NCAA's role has been to provide support and

4   educational resources to member institutions so schools can act to better protect the health and

5   safety of everyone on their campuses, including student-athletes, with respect to sexual abuse.

6   The NCAA has emphasized that it is "committed to supporting and working with campuses to

7   develop collaborative programming, resources, tool kits and best practices to create and maintain a

8   safe campus environment." FAC ¶ 92.  For example, the NCAA has assembled commissions to

9   bring attention to the subject and developed publications and model policies that campuses and

10  their athletic departments can use.  <u>See, e.g.</u>, <u>id</u>. ¶¶ 114, 125, 127.  In addition, the NCAA passed a

11  resolution to support the efforts of member institutions in this space, specifically requiring athletic

12  departments to ensure that all athletics personnel and student-athletes know and follow campus

13  rules related to sexual abuse and that they comply with federal and local laws.  <u>Id</u>. ¶ 126.

14      **B.**      **<u>Plaintiffs Aldrich, Bevins, Johnson, and Corcoran</u>**

15      The NCAA recognizes the damaging effects of sexual abuse on college students, including

16  student-athletes, and acknowledges the courage it takes for survivors of sexual abuse to come

17  forward.  Here is the conduct Plaintiffs allege in the Complaint:

18      ***Aldrich.***  Rembao coached Aldrich at UArizona, from 1996 to 1997.  FAC ¶ 22.  Aldrich

19  alleges that Rembao engaged in inappropriate sexual compliments and thereafter engaged in

20  various sexual acts with her.  <u>Id</u>. ¶¶ 158-173.  Rembao left UArizona for UT.  <u>Id</u>. ¶ 173.  Aldrich

21  transferred there too.  <u>Id</u>. ¶ 179.  At UT, where Aldrich competed until 2000, Rembao allegedly

22  attempted to continue a sexual relationship, but Aldrich maintained her distance.  <u>Id</u>. ¶¶ 22, 181.

23  Aldrich alleges that she did not realize she was sexually abused until 2019, when she watched a

24  documentary.  <u>Id</u>. ¶ 186.

25      ***Bevins.***  Rembao coached Bevins at UT from 1999 to 2000.  FAC ¶¶ 24, 258.  She alleges

26  Rembao psychologically and sexually abused her, including unwanted touching, until she

27  ultimately quit the team and transferred to the University of Arkansas.  <u>See id</u>. ¶¶ 259-295, 297.

28      ***Johnson.***  Rembao coached Johnson at UT between 1999 and 2000.  FAC ¶¶ 23, 205.  She

alleges that he engaged in unwanted sexual touching.  Id. ¶¶ 209, 215, 217-218, 220, 227-232.  In March 2000, Johnson talked to Bevins, "they realized that Rembao was abusing both of them," and they "concluded that they needed to transfer."  Id. ¶¶ 223, 226, 287.  Johnson, like Bevins, transferred to the University of Arkansas.  Johnson alleges that she reported Rembao to UT, UT investigated, and UT found his actions "did not constitute sexual misconduct."  Id. ¶¶ 235-236.

Plaintiffs Aldrich, Bevins, and Johnson do not allege they informed the NCAA about their abuse before this lawsuit.  They allege that due to Rembao's conduct, they suffered damages including emotional distress and lost scholarships.  FAC ¶¶ 374, 390.  They also ask for an injunction ordering the NCAA to implement new rules.  Id. p. 101.

***Corcoran***.  Corcoran is a sophomore on the rowing team at Princeton University.  FAC ¶ 25.  She does not allege any abuse by anyone or risk of such abuse.

## III.   ARGUMENT

Plaintiffs' allegations are insufficient to "allow[] the [C]ourt to draw the reasonable inference that" Defendants are "liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Their claims must be dismissed.

### A.   This Court Lacks Personal Jurisdiction Over the NCAA and Its Board

Plaintiffs' claims against the NCAA—an unincorporated association headquartered in Indiana, FAC ¶ 26—and its Board should be dismissed for lack of personal jurisdiction under Rule 12(b)(2).  Plaintiffs bear the burden of establishing personal jurisdiction.  See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  Due process requires Defendants to have "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  See Daimler AG v. Bauman, 571 U.S. 117, 126 (2014) (citation and alterations omitted).  Personal jurisdiction may be either general ("all-purpose") or specific ("case-linked").  See Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1780 (2017).  Plaintiffs cannot show either.

Plaintiffs appear to rely on general jurisdiction by asserting that the NCAA has members who reside in California.  See FAC ¶ 19 (referencing UC Santa Cruz).  This is insufficient.  Following recent Supreme Court decisions, general jurisdiction is disfavored outside of the

"paradigm" bases for general jurisdiction—a place of incorporation or principal place of business. See Daimler, 571 U.S. at 137; Amiri v. DynCorp Int'l, Inc., No. 14-CV-03333 SC, 2015 WL 166910, at *2 (N.D. Cal. Jan. 13, 2015) (noting the test for general jurisdiction outside place of incorporation or principal place of business is "rarely satisfied").  The NCAA's principal place of business is Indiana.  FAC ¶ 26.

The NCAA is subject to general jurisdiction outside Indiana only in an "exceptional case" if its "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State."  Daimler, 571 U.S. at 139 & n.19 (citations and internal markings omitted).  This is not an "exceptional case."  That the NCAA works with member institutions in California does not create an exceptional case.  Indeed, for many defendants, that exception would swallow the rule.  "Rather, the inquiry calls for an appraisal of a corporation's activities *in their entirety*; a corporation that operates in many places can scarcely be deemed at home in all of them."  BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1559 (2017) (quoting Daimler and finding no jurisdiction where BNSF operated 2,000 miles of tracks in the state).  Given that the NCAA has members in all 50 states, see Campbell Aff. ¶ 5, jurisdiction based on a member's residency would subject the NCAA to jurisdiction in "every [s]tate," a theory of general jurisdiction the Supreme Court rejected as "unacceptably grasping."  See Daimler, 571 U.S. at 138.

Moreover, for general jurisdiction, Plaintiffs cannot rely on the contacts of NCAA members with California.  See Daimler, 571 U.S. at 136 (contacts of subsidiary not sufficient to confer jurisdiction on parent corporation).  Plaintiffs must instead show that *the association itself* had continuous and systematic contacts with California.  See Mehr v. Féd'n Internationale de Football Ass'n, 115 F. Supp. 3d 1035, 1048 (N.D. Cal. 2015) (analyzing sports association's contacts with California, not the contacts of its members, and finding insufficient for jurisdiction). And Plaintiffs do not plead any facts suggesting the NCAA itself is "at home" in California.

Nor can Plaintiffs show specific jurisdiction.  A defendant's "general connections with the forum are not enough" for specific jurisdiction.  Bristol-Myers Squibb Co., 137 S. Ct. at 1781. Instead, claims must, among other things, "arise out of or relate to the defendant's contacts with the forum" such that there is a "connection between the forum and the specific claims at issue."

Id. at 1780, 1781 (citations and internal markings omitted).  The Ninth Circuit follows a "but for"

test to determine if claims "arise out of or relate to" defendant's forum-related contacts, which

requires a "direct nexus" between defendant's contacts with the forum and the claims.  See In re

W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 742 (9th Cir. 2013).

The Complaint's sparse allegations referencing California do not show a "direct nexus"

between Plaintiffs' claims and the NCAA's contacts with California.  Plaintiffs' negligence-based

claims (Counts I-IV) emanate from the alleged deficiencies in the NCAA's rules.  See FAC ¶ 136;

id. ¶¶ 361, 376.  The NCAA facilitates the promulgation of those rules from its headquarters in

Indiana.  See Campbell Aff. ¶¶ 3, 6-9.  See In re Cathode Ray Tube (CRT) Antitrust Litig., 27 F.

Supp. 3d 1002, 1008 (N.D. Cal. 2014) (court may consider evidence in affidavits on motion for

lack of personal jurisdiction).  And the rules were applied to Plaintiffs in Texas, Arizona,

Arkansas, and New Jersey, where they were student-athletes, not in California.  Further, Plaintiffs'

contract and indirect claims (Counts V-XIII) arose in Texas or Arizona, the sites of Rembao's

alleged sexual abuse, or Texas, Arizona, or New Jersey, where Plaintiffs allegedly entered into

contracts with the NCAA.

Plaintiffs do not allege any sexual abuse by Rembao in California.  In fact, Aldrich makes

no factual allegation of any kind related to California.  And her current California residency,

twenty years after the alleged abuse, is insufficient to confer jurisdiction.  See Walden v. Fiore,

571 U.S. 277, 277 (2014) ("The plaintiff cannot be the only link between the defendant and the

forum.").  Corcoran also makes no factual allegation related to California and is not a resident of

California.  FAC ¶ 25.  Bevins and Johnson are not California residents, see id. ¶¶ 23, 24, and their

only reference to California is peripheral to their claims.  They both allege contact with Rembao at

a 2003 NCAA championship in California after he coached them, during which he told Bevins her

success was due to his coaching and took a video of Johnson competing.  Id. ¶¶ 242-243, 304-306.

Rembao's contacts with Plaintiffs at that meet do not confer jurisdiction over the NCAA, as "[d]ue

process requires that a defendant be haled into court in a forum State based on [its] own affiliation

with the State . . . ."  Walden, 571 U.S. at 286.  Even if Rembao's contacts with Plaintiffs at the

2003 meet were (improperly) imputed to the NCAA, Plaintiffs cannot credibly allege that "but

1  for" those contacts (his videoing and self-praise), their claims against the NCAA would not have

2  arisen.  Personal jurisdiction does not extend to claims brought by out-of-state residents who do

3  not allege they have suffered any injury in California by an out-of-state defendant like the NCAA.

4  See Bristol-Myers Squibb Co., 137 S. Ct. at 1779.

5          Moreover, Plaintiffs' allegation that Rembao dated student-athlete Sue McNeal in the early

6  1980s at Cal Poly does not support specific jurisdiction.  Plaintiffs nowhere allege that Rembao

7  abused McNeal or that he coached her while she was an athlete at Cal Poly.  FAC ¶ 31.  (To the

8  contrary, in the very same sentence quoted from the article cited in the FAC at footnote 9, the

9  article explains that Rembao met McNeal *when he was a student-athlete*.  The article goes on to

10  explain that he coached her in her Olympics bid *after* she graduated.)  Nor do Plaintiffs allege that,

11  even if Rembao dated McNeal while she was a student, the NCAA had any knowledge about their

12  relationship.  Thus, the McNeal allegation has no "direct nexus" to Plaintiffs' claims and is not a

13  basis for jurisdiction.

14          **B.    Venue in This Court Is Improper for the NCAA and Its Board**

15          Plaintiffs' allegation that venue is proper because the NCAA "resides in every district in

16  which its members reside," FAC ¶ 20, is incorrect.  And Plaintiffs fail to allege any basis for why

17  venue here is proper for the Board.  Much like personal jurisdiction, venue does not depend on the

18  residency of the members of the NCAA or its Board.  See Denver & R. G. W. R.R. Co. v. Bhd. of

19  R.R. Trainmen, 387 U.S. 556, 559 (1967) (residency for venue "should be determined by looking

20  to the residence of the association itself rather than that of its individual members").  The NCAA,

21  an unincorporated association, resides in any judicial district in which it "is subject to the court's

22  personal jurisdiction."  See 28 U.S.C. § 1391(c)(2).  Because the NCAA is not subject to this

23  Court's personal jurisdiction, venue is improper and the claims must be dismissed under Federal

24  Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406.

25          Section 1406 provides this Court "shall" dismiss the action for improper venue.  But, in the

26  alternative, and only if the Court determines the "interest of justice" so requires, the NCAA

27  requests transfer to the Southern District of Indiana, the district in which the NCAA is

28  headquartered, and in which the action "could have been brought."  See 28 U.S.C. § 1406(a); FAC

¶ 26; Campbell Aff. ¶¶ 3, 6-9.

### C.  The Board Is Not an Entity with the Capacity to Be Sued

The Court should dismiss or strike the claims against the Board because the Board does not exist separately from the NCAA and thus cannot be sued independently of the NCAA.  Rule 17(b) provides that, for parties that are neither individuals nor corporations, a party has the "capacity to sue or be sued" according to "the law of the state where the court is located," here, California.  See Fed. R. Civ. P. 17(b)(3); Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ., 212 F. Supp. 3d 816, 821 (N.D. Cal. 2016) (applying California substantive law to whether a Board could be sued under Rule 17(b)(3)).  California's Corporations Code does not allow for suit against the Board separate from the NCAA.  See Cal. Corp. Code § 105 (identifying only a "corporation" and an "association," but not a board of directors or governors, as entities with capacities to be sued).

Judge Whyte granted a motion to strike claims against the board of a fraternity's alumni association under Rule 17(b)(3).  See Theta Chi Fraternity, 212 F. Supp. 3d at 821.  Judge Whyte found persuasive a case holding that boards do not exist separate from their corporate counterparts and thus are not separate legal entities with the capacities to be sued.  Id. (citing Heslep v. Ams. for African Adoption, Inc., 890 F. Supp. 2d 671, 678 (N.D.W. Va. 2012) (dismissing claims under 17(b) against a board because it is not a separate legal entity from the corporation)).  See also Siegler v. Sorrento Therapeutics, Inc., No. 3:18-cv-01681-GPC-NLS, 2019 WL 581719, at *14 (S.D. Cal. Feb. 13, 2019), reconsideration denied, No. 3:18-cv-01681-GPC-MSB, 2019 WL 1574321 (S.D. Cal. Apr. 11, 2019) (same).

### D.  Plaintiffs Lack Standing to Seek Injunctive Relief and Corcoran Lacks Standing to Seek Any Relief

This Court should dismiss under Rule 12(b)(1), or in the alternative, strike under Rule 12(f), Plaintiffs' request for an injunction because Plaintiffs lack Article III standing to seek such relief.  FAC, Prayer for Relief ¶ X.C.  This Court should also dismiss and/or strike all of Corcoran's claims because she lacks standing to bring any claims.

Former student-athletes Aldrich, Bevins, and Johnson lack standing for injunctive relief because they are not current student-athletes and thus cannot "demonstrate a real or immediate

threat" of injury.  <u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir. 1999) (former student lacked standing to seek injunctive relief challenging an illegal dog sniff at school).

Plaintiffs sought to cure this deficiency by adding new Plaintiff Corcoran, with a two-sentence allegation that she is a current student-athlete at Princeton.  FAC ¶ 25.  This addition does not give Corcoran standing because she fails to "clearly . . . allege facts," <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016), demonstrating, at a minimum, that she has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992).  Corcoran does not even attempt to make this showing.  Unlike Aldrich, Bevins, and Johnson, Corcoran does not allege that she was abused by Rembao or by any other college coach.  Nor does she allege that future sexual abuse by her crew coaches at Princeton is "*certainly* impending" or poses a "substantial risk."  <u>See Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409 (2013) (emphasis in original) (cautioning that imminence "cannot be stretched beyond its purpose" to prevent "speculative" claims); <u>id</u>. at 414 n.5.  Other blanket references to "Plaintiffs" in the FAC do not provide the requisite specificity for Corcoran's allegations.  The FAC fails to amend any of its prior language that referred Aldrich, Bevins, and Johnson as "Plaintiffs" and thus is inexact in its references to "Plaintiffs."  The FAC, for instance, repeatedly refers to the harm suffered by "Plaintiffs," <u>see, e.g.,</u> FAC ¶ 145 (Rembao's abuse "physical and emotionally damaged multiple student-athletes, including Plaintiffs"), but Corcoran does not allege she ever encountered Rembao, nor does she allege any abuse or harm of any kind.  This Court should therefore dismiss and/or strike all of Corcoran's claims.

In addition, because all Plaintiffs lack standing to seek injunctive relief, the class allegations seeking injunctive relief under Rule 23(b)(2), <u>see</u> FAC ¶¶ 13, 14, 356.i, 358; Prayer for Relief ¶ X.C, should also be dismissed or, alternatively, stricken.  <u>See B.C.</u>, 192 F.3d at 1264 (class "does not have standing" if "named plaintiff does not have standing").

**E.      <u>Plaintiffs' Claims—Brought 20 Years After Any Alleged Misconduct—Must Be Dismissed As Untimely</u>**

All thirteen of Plaintiffs' claims relate to conduct that allegedly occurred more than twenty years ago.  Aldrich, Bevins, and Johnson concede the timeliness of their twenty-year old claims

1  turns not on the applicable limitations periods, but instead on whether an exception applies.  See

2  FAC at pp. 61-68; see also Appendix A.  Because no exception applies, all claims are based on

3  twenty-year old conduct and should be dismissed as untimely.  See Rivera v. Peri & Sons Farms,

4  Inc., 735 F.3d 892, 902 (9th Cir. 2013) (a court may consider statute of limitations issues that are

5  "apparent on the face of the complaint" on a motion to dismiss).

6        **1.      Choice of Law[1]**

7            **(a)      Limitations Periods**

8        This Court, sitting in diversity, applies the choice-of-law rules of its forum state.  See CRS

9  Recovery, Inc. v. Laxton, 600 F.3d 1138, 1141-42 (9th Cir. 2010).  Indiana provides the statute of

10  limitations for the negligence-based claims against the NCAA and its Board (Counts I-IV),

11  whereas Arizona and Texas provide the statute of limitations for the contract and vicarious

12  liability claims (Counts V-XIII).  This is because under California's "borrowing statute," this

13  Court applies the statute of limitations of the state in which the "cause of action has arisen."  Cal.

14  Civ. Proc. § 361; see G&G Prods. LLC v. Rusic, 902 F.3d 940, 946 (9th Cir. 2018) (because

15  claims arose in Italy, if Italian statute of limitations would bar claims, § 361 also bars claims).

16  Plaintiffs' claims against the NCAA have no alleged connection to California, so no claims arose

17  in California.  Instead, the negligence-based claims arose in Indiana, where the NCAA is

18  headquartered, and thus is the origin of where Plaintiffs allege the NCAA failed to take action to

19  protect Plaintiffs from harm.  And the vicarious liability and contract claims arose primarily from

20  events in Arizona and Texas, where Rembao allegedly sexually abused Aldrich, Bevins, and

21  Johnson and where they allegedly entered into contracts with the NCAA.

22        Plaintiffs assert three exceptions to the limitations period:  Aldrich invokes the discovery

23  _____

24  [1] Plaintiffs do not identify under which state's law they seek relief.  The choice-of-law analysis in

25  this Motion is for the named Plaintiffs.  The NCAA does not suggest that the same law would

26  apply to absent class members.  Choice of law varies issue-by-issue so the analysis will differ

27  across the proposed nationwide class.  See Beech Aircraft Corp. v. Superior Court, 61 Cal. App.

28  3d 501, 518 (1976) ("Each choice of law issue requires separate consideration.").

rule, while Bevins and Johnson argue for tolling under equitable estoppel/fraudulent concealment or under a new "victimization exception" they ask this Court to create.  FAC ¶¶ 316-348.

### (b)     California Law Applies to the Discovery Rule

When a borrowing statute applies, California courts have applied California law (as the forum state's law) to determine when a claim "accrues."  See Cossman v. DaimlerChrysler Corp., 108 Cal. App. 4th 370, 376 (2003), as modified (Apr. 30, 2003); G&G Prods. LLC, 902 F.3d at 948 n.6.  Although Plaintiffs characterize the discovery rule as an issue of tolling, FAC ¶¶ 316-329, California law is clear that it relates to accrual, i.e., when the statute of limitations "begins to run."  See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806-07 (2005).

### (c)     Indiana and Texas Law Apply to Equitable Estoppel/Fraudulent Concealment

Bevins and Johnson argue that equitable estoppel and fraudulent concealment would "toll" their limitations period.  "Normally, when a foreign jurisdiction's limitations period is found to apply, that jurisdiction's tolling laws will also apply."  Hatfield v. Halifax PLC, 564 F.3d 1177, 1184 (9th Cir. 2009) (quoting the Restatement (Second) of Conflict of Laws § 142 cmt. f).  Because Indiana's limitations periods (for the negligence-based claims) and Texas's limitations periods (for the contract and vicarious claims) apply for Bevins and Johnson, Indiana and Texas law also govern whether equitable estoppel/fraudulent concealment tolls the limitations periods.[2]

### 2.     The Discovery Rule Does Not Revive Aldrich's Claims

Plaintiffs assert the discovery rule only as to Aldrich.  See FAC ¶¶ 316-329.  The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  Fox, 35 Cal. 4th at 807 (affirming dismissal).  Under California law, the "statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her."  Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988); id. at 1110 n.7 (clarifying that "'wrong,'

---

[2] Because no court appears to have adopted Plaintiffs' new, "victimization exception," FAC p. 66, ¶ 344, a choice-of-law analysis is neither necessary nor possible for that issue.

1    'wrongdoing,' and 'wrongful' are used in their lay understanding").

2         Aldrich asserts that her claims did not accrue until 2019, when she watched a documentary

3    and realized that she had been sexually abused by Rembao.  FAC ¶¶ 186, 319, 326.  But this

4    assertion is belied by other, more specific allegations.  Aldrich does not allege that she repressed

5    all memories of Rembao's conduct, nor that her partial repression occurred immediately after the

6    events.  Id. ¶ 316 ("*After she left the University of Arizona*, Aldrich repressed *the majority of* her

7    memories of Rembao's sexual contact with her.") (emphases added).  Indeed, Plaintiffs' argument

8    for creating a "victimization exception" acknowledges that "[w]ith some victims, memories are

9    not always completely repressed" and therefore do not "fall within the discovery rule."  Id. ¶ 345.

10        In addition, numerous allegations demonstrate that Aldrich appreciated the wrongfulness

11   of Rembao's conduct when it took place.  For example, Aldrich alleges that "Rembao stopped

12   trying and the retaliation began" after Aldrich "maintained her distance" at UT.  FAC ¶ 181.  She

13   further alleges that by 1999, she was "beaten down by Coach Rembao" and was "mentally,

14   emotionally, and physically depleted."  Id. ¶ 183; see also id. ¶ 182 ("If she didn't jump well, he

15   made her feel unqualified, insignificant, and a loser.").  Moreover, Aldrich alleges her roommate

16   reported to UArizona that in 1996, she discovered Rembao hiding in her closet after walking in on

17   Rembao and Aldrich.  Id. ¶¶ 170-171.  Aldrich's allegations tie Rembao's behavior directly to his

18   advances, noting that "[h]e retaliated against her for putting distance between them and not

19   engaging in a sexual relationship."  Id. ¶¶ 183, 181.

20        In short, specific allegations in the Complaint show that Aldrich recognized the

21   wrongfulness of Rembao's actions in real time, meaning her claims accrued more than twenty

22   years ago.  See Mark K. v. Roman Catholic Archbishop, 67 Cal. App. 4th 603, 612 n.9 (1998), as

23   modified on denial of reh'g (Oct. 28, 1998) (plaintiff's allegations that an abuser threatened him

24   with physical harm and told him that the abuser would not be caught "are antithetical to the notion

25   that plaintiff failed to contemporaneously appreciate the wrongfulness of [the abuser's] conduct");

26   see also Jolly, 44 Cal. 3d at 1111.  Aldrich's alternative argument that her claims did not accrue

27   until the fall of 2019, when she was "able to comprehend her legal rights," FAC ¶¶ 328-329,

28   similarly lacks merit.  See Jolly, 44 Cal. 3d at 1110 (discussing the "well established rule that

1    ignorance of the legal significance of known facts" does not delay accrual).

2         Although Arizona law does not apply to accrual, Aldrich's argument fails even under the

3    case she cites, for the same reasons.  FAC ¶¶ 317, 321, 329 (citing <u>Doe v. Roe</u>, 191 Ariz. 313

4    (1998)).  <u>Doe</u> confirms that a claim accrues once the plaintiff has knowledge "sufficient to identify

5    that a wrong occurred and caused injury."  191 Ariz. at 323.  The court held the discovery rule

6    could apply under the unique facts of that case, none of which is alleged here: a victim of

7    childhood incest who denied the truth of her repressed memories when she began to recover them,

8    and who discharged her duty to investigate by immediately starting therapy.  <u>Id</u>. at 961-63.

9                    **3.       The Statute of Limitations Is Not Tolled for Bevins and Johnson**

10        The timeliness analysis is different for Bevins and Johnson, who concede their claims

11   accrued more than twenty years ago.  FAC ¶ 287 ("[I]n or around March 2000, Bevins and

12   Johnson admitted to each other that they were both victims of Rembao's sexual and mental

13   abuse."); <u>id</u>. ¶ 223.  Later in 2000, Johnson "submitted a formal complaint to [UT]," <u>id</u>. ¶ 235, and

14   Bevins was interviewed as part of that investigation, <u>id</u>. ¶¶ 300-302.

15        Bevins and Johnson argue their claims are timely because the doctrines of equitable

16   estoppel and fraudulent concealment tolled the limitations period until October 2019.  FAC

17   ¶¶ 330-342.  Specifically, Johnson alleges "[UT] attacked Ms. Johnson, found that Rembao's

18   conduct did not constitute sexual misconduct, and led Ms. Johnson to believe she could not sue

19   and/or did not have a claim against Texas or Rembao."  <u>Id</u>. ¶ 236.  Bevins alleges UT interviewed

20   her, asked if she was certain the events she described happened, and "led her to believe that she

21   did not have a claim, and that Rembao's conduct was not wrong or abusive."  <u>Id</u>. ¶ 302.

22        These facts are insufficient as a matter of law.  Under Indiana and Texas law, a plaintiff

23   seeking to invoke equitable estoppel and fraudulent concealment must show, at a minimum, that

24   *the defendant* took some action that induced the plaintiff not to sue.  <u>See Ne. Rural Elec.</u>

25   <u>Membership Corp. v. Wabash Valley Power Ass'n, Inc.</u>, 56 N.E.3d 38, 44 (Ind. Ct. App. 2016)

26   (equitable estoppel "is an extraordinary remedy" that prevents a party from asserting the statute of

27   limitations "*when such party* by fraud or other misconduct has prevented a party from

28   commencing his action") (internal quotations and citation omitted) (emphasis added); <u>Marshall v.</u>

1   First Baptist Church of Houston, 949 S.W.2d 504, 507–08 (Tex. Ct. App. 1997) (similar);

2   Meisenhelder v. Zipp Exp., Inc., 788 N.E.2d 924, 931 (Ind. Ct. App. 2003) (fraudulent

3   concealment); Borderlon v. Peck, 661 S.W.2d 907, 909 (Tex. 1983) (same).

4         Plaintiffs do not allege *a single* statement or action by the NCAA—fraudulent or

5   otherwise—in connection with UT's investigation and report.  FAC ¶¶ 330-342.  Nor can UT's

6   investigation be attributed to the NCAA, as Plaintiffs do not allege that the NCAA had day-to-day

7   control over UT's actions in conducting the investigation—indeed, they do not allege control of

8   any kind.  See Cox v. Gov't Emps. Ins. Co., 126 F.2d 254, 257 (6th Cir. 1942) ("A voluntary

9   association is not liable for the tort of a member when perpetrated beyond the scope of its control

10  over his acts."); Smith v. Delta Tau Delta, Inc., 9 N.E.3d 154, 164 (Ind. 2014) (no agency

11  relationship between national and local fraternity as, although the national fraternity had the ability

12  to impose post-conduct discipline on local fraternity and its members, it lacked control over

13  "everyday management and supervision of activities and conduct").  Bevins and Johnson also fail

14  to allege the other elements of equitable estoppel and fraudulent concealment, including

15  materiality, intent, and lack of knowledge by the other party.  See generally Binder v.

16  Benchwarmers Sports Lounge, 833 N.E.2d 70, 73–74 (Ind. Ct. App. 2005); Johnson & Higgins of

17  Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 515 (Tex. 1998).

18        Johnson and Bevins also reference "equitable tolling."  FAC ¶ 336.  But this case does not

19  fit the narrow situations in which the doctrine has been applied in Indiana and Texas.  See Wabash

20  Grain, Inc. v. Smith, 700 N.E.2d 234, 240 & n.9 (Ind. Ct. App. 1998) (rejecting application of

21  equitable tolling and noting "Indiana has yet to recognize equitable tolling as it is defined under

22  federal law"); Bilinsco Inc. v. Harris Cty. Appraisal Dist., 321 S.W.3d 648, 654 (Tex. Ct. App.

23  2010) (describing defective pleading and mistaken defendant cases).

24  **4.     A Federal Court Sitting in Diversity Should Not Create a New**
    **         Equitable Exception to Excuse Plaintiffs' Untimely Claims**

25        Seeming to recognize that no established exceptions apply to make their claims timely,

26  Plaintiffs urge that a "new rule must be created to toll the statute of limitations" for sexual abuse

27  victims to benefit Bevins and Johnson.  FAC p. 66, header C.  Plaintiffs name this "new rule" a

28

"victimization exception." Id. ¶ 344.  This Court should decline Plaintiffs' invitation to create a "new rule" because a federal court sitting in diversity is not positioned to "create" equitable exceptions to state statutes of limitations.  See generally Guar. Tr. Co. of N.Y. v. York, 326 U.S. 99, 110 (1945) (discussing federal courts' roles in diversity cases and affirming that "if a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery").  Even if this Court were inclined to create such an exception, it would not salvage Bevins and Johnson's claims.  Plaintiffs' "victimization exception" proposes to toll the limitations period for sexual abuse by someone in a recognized position of power until the victim is able to identify the conduct as sexual abuse.  FAC ¶ 344.  Bevins and Johnson, however, were aware in 2000 that they had been sexually abused by Rembao.  Id. ¶ 287.

### F.     The NCAA and Its Board Do Not Owe a Legally Actionable Duty As Required to Support Plaintiffs' Negligence-Based Claims

If this Court does not dismiss the Complaint as to the NCAA and its Board under one of the four global defects discussed above, it should dismiss each individual claim under Rule 12(b)(6).  Plaintiffs' negligence-based claims (Counts I-IV) assert that the NCAA and its Board should have taken certain steps to protect Plaintiffs from Rembao.  See, e.g., FAC ¶ 361 (alleging the NCCA owed a duty to implement rules).  But absent a legally-recognized duty owed by the NCAA to Plaintiffs, their negligence claims fail.  See Yost v. Wabash Coll., 3 N.E.3d 509, 520 (Ind. 2014).  Plaintiffs fail to plead that the requisite duty exists here as a matter of law.  See Rosenbaum v. Seybold, No. 1:06-CV-352-TS, 2008 WL 513205, at *2 (N.D. Ind. Feb. 22, 2008) ("Whether [defendant] had a duty of care to the Plaintiffs . . . is purely a legal question that may potentially be resolved on a motion to dismiss.").

#### 1.     Choice of Law

The law of Indiana—where the NCAA is headquartered, FAC ¶ 26—applies to the issue of whether the NCAA owed Plaintiffs a duty of care.  Under both California's choice-of-law rules and due process principles, application of California substantive law is constitutional only if the class action proponent can "show that California has significant contact or significant aggregation of contacts to the claims of each class member."  Mazza v. Am. Honda Motor Co., 666 F.3d 581,

1   589 (9th Cir. 2012) (internal quotation marks and citation omitted).  This principle is "not only

2   relevant but controlling" at the motion to dismiss stage.  Cover v. Windsor Surry Co., No. 14-cv-

3   05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (quoting Frezza v. Google Inc.,

4   No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *5 (N.D. Cal. Apr. 22, 2013)).  Plaintiffs do not

5   allege that California had *any* "significant contact or significant aggregation of contact" with their

6   own claims and California law therefore does not apply to the merits.  See Mazza, 666 F.3d at

7   589.

8          Application of California's choice-of-law rules makes clear that the law of Indiana—where

9   the NCAA is headquartered and maintains its principal place of business, FAC ¶ 26—applies to

10  the issue of whether the NCAA owed Plaintiffs a duty.  Mazza, 666 F.3d at 589.  Under

11  California's three-part "government interest" test, courts analyze:

12         *First*, "whether the relevant law of each potentially affected jurisdictions with regard to the

13  particular issue is the same or different."  Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95,

14  107 (2006).  The law in California regarding duty is materially different from the law in Indiana:

15  whereas California relies on an eight-factor test that considers not only foreseeability but also a

16  myriad of specific public policy concerns, ranging from moral blame to insurance availability,

17  Indiana relies on a three-factor test—and the only factor in common between the two is

18  foreseeability.  Compare Rowland v. Christian, 69 Cal. 2d 108, 113 (1968) with Webb v. Jarvis,

19  575 N.E.2d 992, 997 (Ind. 1991).

20         *Second*, if there is a difference in law, "the court examines each jurisdiction's interest in

21  the application of its own law under the circumstances of the particular case to determine whether

22  a true conflict exists."  Kearney, 39 Cal. 4th at 107-08.  Here, California's interest in applying its

23  law is attenuated, as it was in Cover and Frezza, because the place of the alleged wrong has the

24  predominant interest.  Cover, 2016 WL 520991, at *8; Frezza, 2013 WL 1736788, at *7.  Here,

25  Plaintiffs allege that the NCAA owed a duty to Plaintiffs to enact certain rules, FAC ¶¶ 361, 376,

26  and Indiana, the state where the NCAA is headquartered and maintains its principal place of

27  business, id. ¶ 26, is where it would have facilitated work with its member institutions to do so.

28         *Third*, if there is a true conflict, the court "compares the nature and strength of the interest

-17-

of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated," and the law of the jurisdiction whose policy would be more impaired applies.  <u>Kearney</u>, 39 Cal. 4th at 108 (internal quotation marks omitted).  Here, Indiana has a strong interest in the application of its own laws to an association headquartered in Indiana, which is alleged to have acted wrongly in its official acts or omissions—none of which is alleged to have occurred anywhere other than where the NCAA is headquartered.  California does not have a strong interest in the application of its laws on the issue of duty because none of the NCAA's wrongdoing is alleged to have occurred in California.  Just as in <u>Cover</u>, where the alleged harm occurred in Rhode Island and the court rejected plaintiff's invocation of California law, here California has an insufficient interest in the application of its laws as compared to Indiana, where the "events necessary for liability in this case" as to the NCAA's duty occurred.  <u>Cover</u>, 2016 WL 520991, at *8.

Allowing California to trump Indiana's interests in applying its laws to conduct within its borders would be inconsistent with the "principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders."  <u>Mazza</u>, 666 F.3d at 591.  Likewise, applying Texas, Arizona, or New Jersey law to the duty owed to Plaintiffs on their direct negligence claims would be inconsistent with this principle, as the NCAA's alleged actions and omissions in addressing sexual abuse occurred in Indiana.  Moreover, the law on duty in Texas, Arizona, and New Jersey is materially different from California's law.  <u>See</u> <u>Quiroz v. ALCOA Inc.</u>, 243 Ariz. 560, 565 (2018) (observing that foreseeability is *not* a factor considered in the duty analysis); <u>Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins</u>, 926 S.W.2d 287, 289–90 (Tex. 1996) (weighing factors such as "social utility of the actor's conduct" and "superior knowledge"); <u>Robinson v. Vivirito</u>, 217 N.J. 199, 208 (2014) (considering factors including the "opportunity to exercise care" and the "nature of the risk," but not factors considered under California's <u>Rowland</u> test, including the availability of insurance and moral blame).  And Texas, Arizona, and New Jersey's interest in applying its own law is attenuated as compared to that of Indiana, as none of the NCAA's purported actions or omissions occurred in those states.

**2.      Plaintiffs Fail to Establish the Required Duty to Plaintiffs**

1

2

                 **(a)**       **The NCAA and Its Board Owe No Legally Cognizable Duty of Care to Plaintiffs**

3

      "A duty of reasonable care is 'not, of course, owed to the world at large,' but arises out of a

4

relationship between the parties." <u>Williams v. Cingular Wireless</u>, 809 N.E.2d 473, 476 (Ind. Ct.

5

App. 2004) (quoting <u>Webb</u>, 575 N.E.2d at 997).  Nor is there a "duty . . . to control the conduct of

6

a third person as to prevent physical harm to another" without a special relationship between the

7

defendant and the third person or the defendant and the person seeking protection.  <u>See Neal v.</u>

8

<u>IAB Fin. Bank</u>, 68 N.E.3d 1114, 1118 (Ind. Ct. App. 2017) (quoting Restatement (Second) of

9

Torts § 315).  When imposing a duty, Indiana courts often balance the so-called <u>Webb</u> factors: the

10

parties' relationship, the reasonable foreseeability of the harm, and public policy concerns.  <u>See</u>

11

<u>Webb</u>, 575 N.E.2d at 995.  All three <u>Webb</u> factors weigh against imposing a duty here.

12

      *First*, with over 460,000 student-athletes competing in NCAA sports annually, FAC ¶ 353,

13

at more than 1,000 schools, <u>id</u>. ¶ 86, there is little doubt the NCAA lacks "direct oversight or

14

control" over student-athletes like Plaintiffs.  <u>See Yost</u>, 3 N.E.3d at 521 (no duty imposed on

15

national fraternity for incidents by members when no "direct oversight and control" of members

16

and when relationship was "remote").  Indeed, the NCAA's member institutions have delegated to

17

themselves—not the NCAA—the responsibility of overseeing student-athletes' health and safety.

18

FAC ¶ 89 (citing NCAA Const., art. 2, § 2.2.3).  Nor do Plaintiffs allege that the NCAA had any

19

type of "direct oversight or control" over coaches.  Although Plaintiffs vaguely allege the NCAA

20

maintained "control over and responsibility *for intercollegiate sports*," <u>id</u>. ¶ 88 (emphasis added),

21

Plaintiffs have not, alleged that the NCAA had any type of direct supervision or control over all

22

member institutions' coaches (nor would such an allegation be true).  Nor do they allege that the

23

NCAA had a "right to or duty to control [Rembao's] actions" or that the NCAA was in a "superior

24

position to supervise or protect" Rembao.  <u>See Neal</u>, 68 N.E.3d at 1121.  As discussed below,

25

Rembao was neither an employee nor agent of the NCAA.

26

      *Second*, Plaintiffs do not make any factual allegation showing their abuse was reasonably

27

"foreseeable."  <u>See Goodwin v. Yeakle's Sports Bar & Grill, Inc.</u>, 62 N.E.3d 384, 392 (Ind. 2016)

28

(foreseeability turns on "whether there is some probability or likelihood of harm that is serious

enough to induce a reasonable person to take precautions to avoid it") (citation omitted).  Plaintiffs
identify policies issued by other sports associations in the 1990s prohibiting coach-athlete sexual
relationships or sexual abuse.  FAC ¶¶ 62, 69, 75.  But three non-collegiate sports associations
issuing policies condemning sexual abuse are not events that make the type of abuse Plaintiffs
suffered either "probabl[e]" or "likel[y]" such that the NCAA could have reasonably foreseen
Plaintiffs' sexual abuse.  There is nothing in the Complaint to support the requisite showing of
reasonable foreseeability that Plaintiffs faced a risk of sexual abuse such that the NCAA should
have acted.  Notably, too, Plaintiffs have not alleged that they informed the NCAA about any
wrongdoing by coaches at their institutions.  They do make a conclusory allegation that the
"NCAA and/or its agents" knew of Rembao's abuse.  Id. ¶ 479.  The use of the conditional
"and/or" suggests Plaintiffs have no basis for making this speculative allegation.

   *Third*, the final <u>Webb</u> factor—public policy—counsels against finding a duty for the
NCAA because it would punish the NCAA for taking steps to support its member institutions to
combat sexual abuse.  The <u>Yost</u> court recognized it would be bad policy to impose a duty on a
national fraternity that undertook "programs to promote safe and positive behavior and to
discourage hazing and other personally and socially undesirable conduct."  <u>Yost</u>, 3 N.E.3d at 521.
Similarly here, the NCAA has helped assemble commissions to raise awareness about campus
sexual abuse, FAC ¶ 138, and helped develop publications and model policies that member
institutions can use to combat sexual abuse on their respective campuses, <u>id</u>. ¶¶ 114, 126, 127.  As
in <u>Yost</u>, these actions "should be encouraged, not disincentivized."  <u>Yost</u>, 3 N.E.3d at 521.

   **(b)**  **The NCAA and Its Board Did Not Gratuitously or Voluntarily
Assume a Duty**

   Even if a party does not owe a legally recognized general duty of care under Indiana law, a
party may, under limited circumstances, "gratuitously or voluntarily" assume a duty that "creates a
special relationship between the parties and a corresponding duty to act in a manner of a
reasonably prudent person."  <u>See</u> <u>Yost</u>, 3 N.E.3d at 517.  This "requires affirmative, deliberative
conduct such that it is apparent that the actor specifically undertook to perform the task that he is
charged with having performed negligently."  <u>Id</u>. (citations and internal markings omitted).

1    Plaintiffs allege the NCAA's duty arises from its constitution, bylaws, and website that

2    allegedly established a duty to protect student-athlete's health and well-being, along with the

3    Board of Governor's "charge" to operate consistent with the NCAA's purpose and the NCAA's

4    "positioning of itself as the exclusive authority in intercollegiate athletics to preserve its goal of

5    preserving amateurism."  FAC ¶ 361(2)(o).  Such general, aspirational statements regarding

6    student-athlete well-being or about the roles of the NCAA and Board in collegiate athletics are

7    insufficient to allege the NCAA undertook "affirmative, deliberative conduct" to protect Plaintiffs

8    from Rembao's alleged abuse.  See, e.g., Yost, 3 N.E.3d at 517 (college did not voluntarily

9    assume duty through a general policy against hazing that "evince[d] no more than a general intent

10   to elicit good behavior from and maintain general order among the student body").

11   Elsewhere, Plaintiffs identify several steps the NCAA has taken to support its member

12   institutions in working to prevent sexual abuse on campuses.  See FAC ¶¶ 114, 126, 127.  But the

13   NCAA could not have assumed a duty to protect Plaintiffs from Rembao's alleged abuse in the

14   late 1990's through voluntary steps that Plaintiffs allege the NCAA took over a decade later.  See

15   id. at 23 ("[T]he NCAA took no action to protect [student-athletes] from sexual abuse until

16   2012").  Stated another way, the NCAA could not have negligently performed a duty it had not yet

17   assumed.  See Yost, 3 N.E.3d at 517 ("[F]or without the actual assumption of the undertaking

18   there can be no correlative legal duty to perform that undertaking carefully.") (citation omitted).

19   Even if Plaintiffs were to allege the NCAA assumed a duty in the 1990s, Indiana cases

20   would foreclose their theory.  The Indiana Supreme Court has twice held that national fraternities

21   did not voluntarily assume duties of care to their members to prevent hazing injuries, reasoning

22   that educational programs and bylaws discouraging hazing did not create "actual oversight and

23   control" over their members.  See Yost, 3 N.E.3d at 521; see also Smith, 9 N.E.3d at 160.

24   Likewise, the NCAA, by making statements condemning sexual abuse or providing resources, has

25   not assumed "actual oversight or control" on the issue.

26   Even more on point, in Lanni v. National Collegiate Athletic Ass'n, 42 N.E.3d 542 (Ind.

27   Ct. App. 2015), a college fencer sued the NCAA following an eye injury at a competition.  The

28   NCAA had, among other things, taken steps to modify safety guidelines and collected data to help

provide student-athletes with a safe environment.  Id. at 553.  The court held that the NCAA had

not assumed a duty to protect student-athletes from harm because "the specific duties undertaken

by the NCAA with respect to the safety of its student-athletes was simply to provide information

and guidance to the NCAA's member institutions and student-athletes."  Id.  Although the steps

taken by the NCAA to actively engage its member institutions and student-athletes in how to

avoid unsafe practices were "commendable," the court found that they did "not rise to the level of

assuring protection of the student-athletes from injuries that may occur at sporting events."  Id.

Similarly here, the specific steps identified by Plaintiffs—including NCAA model policies for

member institutions' voluntary adoption, FAC ¶ 114, publications discussing "Athletics' Role in

Support of Healthy and Safe Campuses," id. ¶ 127, and commissions to "monitor and track"

sexual violence, id. ¶ 138—are simply informational resources and guidance for member

institutions and student-athletes.  They do not, under Yost, Smith, or Lanni, rise to a level of

assuring protection of student-athletes like Plaintiffs from sexual abuse by coaches like Rembao.

### (c)     The NCAA Does Not Owe a Fiduciary Duty to Plaintiffs

Plaintiffs' assertion in support of Count III (breach of fiduciary duty) that the NCAA owes

a fiduciary duty to Plaintiffs arising from a "special relationship founded upon trust and

confidence between the NCAA and its student-athletes," FAC ¶ 392, is incorrect given the narrow

circumstances under which Indiana law recognizes fiduciary duties.  A fiduciary relationship

requires a "confidential relationship," which exists "whenever confidence is reposed by one party

in another with resulting superiority and influence exercised by the other."  Huntington Mortg. Co.

v. DeBrota, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) (citation omitted).  Certain specified

relationships create a presumption of influence—for instance, an attorney and client.  See In re

Estate of Neu, 588 N.E.2d 567, 570 (Ind. Ct. App. 1992).  Relationships between a national

association of colleges and universities and student-athletes are not recognized as having this

presumption of influence.  Plaintiffs do not allege facts showing they personally had confidential

relationships with the NCAA resulting in influence over them.  Nor could they.  See Schmitz v.

Nat'l Collegiate Athletic Ass'n, 67 N.E.3d 852, 870 (Ohio Ct. App. 2016) ("To suggest that the

NCAA maintains a 'special relationship' akin to a fiduciary relationship with all of its 400,000

1    students who participate in intercollegiate athletics is simply not supported under the law.").

2                      **(d)     The NCAA Does Not Owe a Duty to Support Plaintiffs'
                                 "Negligent Misrepresentation/Omission" Claim**

3            To support their "negligent misrepresentations and omissions claim" (Count IV), Plaintiffs

4    allege the NCAA "concealed" certain allegedly material information.  FAC ¶¶ 400-401.  Indiana

5    does not recognize a negligent misrepresentation claim outside of the context of professionals,

6    including but not limited to brokers, attorneys, abstractors, and surveyors, and employer-employee

7    relationships.  See Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc., No. 1:17-cv-00949-

8    LJM-DML, 2017 WL 4123050, at *9 (S.D. Ind. Sept. 18, 2017).  Even if it did, Plaintiffs have not

9    identified any misrepresentations by the NCAA.  See Passmore v. Multi-Mgmt. Servs., Inc., 810

10   N.E.2d 1022, 1025 (Ind. 2004) (negligent misrepresentation requires an "affirmative

11   misrepresentation").  And, as explained above, Plaintiffs have not alleged the requisite relationship

12   to show the NCAA owed a duty to disclose any allegedly material facts.  See, e.g., Harmon v.

13   Fisher, 56 N.E.3d 95, 99-100 (Ind. Ct. App. 2016) ("duty to speak" for purposes of constructive

14   fraud may arise from a fiduciary relationship or between a buyer and seller).

15           **G.      Plaintiffs' Contract and Third Party Beneficiary Claims Fail**

16           For this motion, Plaintiffs' contract claims raise two questions: (1) have Plaintiffs and the

17   NCAA entered a valid contract (Counts V-VI); and (2) were Plaintiffs third-party beneficiaries to

18   a contract between the NCAA and its members (Count VII).  The answer to both is no.

19                   **1.      Choice of Law**

20                      **(a)     California Law Applies to the Issue of Contract Validity**

21           Under California's choice-of-law rules, the government-interest analysis applies to whether

22   a contract is valid and enforceable.  See Castaldi v. Signature Retail Servs., Inc., No. 15-cv-00737-

23   JSC, 2016 WL 74640, at *5 (N.D. Cal. Jan. 7, 2016) (citing Pokorny v. Quixtar, Inc., 601 F.3d

24   987, 994 (9th Cir. 2010) (applying government interest test to contract enforceability).  For

25   purposes of this motion, there are no material differences between California, Arizona, Texas, and

26   New Jersey law for whether there is a valid contract, so California law applies.

27                      **(b)     Arizona, Texas, and New Jersey Law Applies to the Third-Party
                                 Beneficiary Claim**

28

1       The choice-of-law rules codified in Civil Code § 1646 apply to questions of contract

2   interpretation.  See Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1449 (2007), as

3   modified (Sept. 5, 2007).  Whether a contract was intended to benefit a third party is a question of

4   contract interpretation.  Cline v. Homuth, 235 Cal. App. 4th 699, 705 (2015).  Under section 1646,

5   a court applies the law of the contract's "place of performance." Cal. Civ. Code § 1646.

6       Plaintiffs identify the Division I Manual (hereinafter "Manual") as the "contract" for which

7   Plaintiffs were beneficiaries.  FAC ¶¶ 421, 423, 87.  Assuming the Manual constitutes a contract

8   between the NCAA and member institutions (which it does not), the Manual's intended "place of

9   performance" was on the member institution's campus: here, UArizona, UT, and Princeton.  Thus,

10   Arizona, Texas, and New Jersey law applies to Plaintiffs' third-party beneficiary claim.

11              **2.**      **Plaintiffs' Contract-Related Claims Must Be Dismissed**

12              **(a)**      **Breach of Express/Implied Contract**

13       Plaintiffs' breach of express and implied contract claims (Count V and VI) should be

14   dismissed because Plaintiffs have not identified a valid contract between themselves and the

15   NCAA.  See Acoustics, Inc. v. Trepte Constr. Co., 14 Cal. App. 3d 887, 913 (1971).  A mutual

16   manifestation of assent is required for both claims.  See Binder v. Aetna Life Ins. Co., 75 Cal.

17   App. 4th 832, 850 (1999) ("The distinction between *express* and *implied in fact* contracts relates

18   only to the *manifestation of assent;* both types are based on the expressed or apparent intention of

19   the parties.").  Plaintiffs point to the NCAA's Student-Athlete Statement form (hereinafter "form")

20   FAC ¶ 408, but the form contains no mutual assent between the athlete and the NCAA to enter

21   into a contractual relationship.  The form sets out its "purpose" in its header: "[t]o assist in

22   certifying eligibility."  See FAC Ex. A. at 2.  The form requires student-athletes to attest that they

23   have reviewed the Manual for the portions that "address [their] eligibility."  Id. at 2.  It references

24   the Manual, but only the requirements relating to "the conditions [student-athletes] must meet to

25   be eligible and the requirement that [they] sign this form."  Id. at 3.  It does not contain *any*

26   affirmative commitment by the NCAA to do anything, not even a commitment to process the

27   form—rather, the form states that it is to be returned to the *member institution's* director of

28   athletics and kept there for six years.  Id. at 8.  As the Manual explains, while the NCAA

"prescribe[s] [the contents]" of the form, the member institution administers the form and

maintains the form.  Campbell Aff., Ex. 1 at 7 (Bylaw art. 12 § 12.7.2.1); id. at 6 (NCAA Const.

art. III § 3.2.4.6.1).  Indeed, it is not clear that *Plaintiffs* assented to the alleged contract at all;

although they plead the NCAA required student-athletes to sign the statement, they do not plead

*they* in fact signed it.  FAC ¶ 408.

In short, the form does not constitute a contract between the NCAA and student-athletes;

instead, it allows member institutions to collect information on students' eligibility to participate

in NCAA sports.  Cf. Hall v. Nat'l Collegiate Athletic Ass'n, 985 F. Supp. 782, 794 & n.27 (N.D.

Ill. 1997) (concluding that a different form verifying the coursework eligibility of prospective

student-athletes constituted a contract for the NCAA's processing agent to "process and then

evaluate [the] application" in consideration of a fee and that the student could sue for breach only

if the agent "had not processed the information, but cashed the check anyway").

Plaintiffs attempt to cobble together a contract by arguing that the form references the

Manual, in which they allege the NCAA makes promises to student-athletes.  This, they contend,

makes the Manual a contract between student-athletes and the NCAA.  FAC ¶¶ 410-412.  This

argument fails.  A review of the Manual makes clear that the NCAA did not make any promises

for the student-athletes' benefit in the Manual.  Instead, the Manual divides responsibilities

between the NCAA and member institutions.  As the Manual makes clear in the very provisions

Plaintiffs cite, while the Manual sets as a goal that "[i]ntercollegiate athletics programs . . . be

conducted in a manner designed to protect and enhance the physical and educational welfare of

student-athletes," it places the responsibility of doing so *with the member institution*, who oversee

the day-to-day operations of their respective programs.  Contrary to Plaintiffs' selective quotation

of the Manual, the NCAA does not pledge to require the member institutions to do anything.

Instead, the Manual makes it "the responsibility of each member institution to protect the health of

and provide a safe environment for each of its participating student-athletes," "to establish and

maintain an environment that fosters a positive relationship between the student-athlete and

coach," and "to establish and maintain an environment in which a student-athlete's activities are

conducted as an integral part of the student-athlete's educational experience."  Compare FAC

¶ 410(e)-(g) <u>with</u> Campbell Aff., Ex. 1 at 3 (NCAA Const. art. II §§ 2.2.3, 2.2.4, 2.2.1).  The

NCAA's role, meanwhile, is to "assist the institution" in achieving compliance while "uphold[ing]

the principle of institutional control."  Campbell Aff., Ex. 1 at 2 (NCAA Const. art. I § 1.2(b), <u>id</u>.

at 4 (art. II § 2.8.2).

Because the Manual contains no promises by the NCAA to student-athletes, there is no

valid contract between the NCAA and student-athletes in the form or the Manual, and the claim

must be dismissed.  <u>See</u> <u>Bradley v. Nat'l Collegiate Athletic Ass'n</u>, 249 F. Supp. 3d 149, 172

(D.D.C. 2017) (dismissing claim because plaintiff failed to plead valid contract with the NCAA).

As these same facts and circumstances form the basis of Plaintiffs' implied contract claim, FAC

¶ 418, it must similarly fail.

**(b)       Breach of Contract as Third-Party Beneficiaries**

Plaintiffs also cannot show that they are the third-party beneficiaries of a contract between

the NCAA and member institutions (Count VII).  A third party suing for breach of contract must

show that the contracting parties *intended* to benefit him or her.  <u>See</u> <u>City of Houston v. Williams</u>,

353 S.W.3d 128, 145 (Tex. 2011) ("We do not create a third-party benefit by implication; the

presumption is the parties contracted only for themselves, absent a clear showing of intent

otherwise."); <u>see also</u> <u>Araiza v. U.S. W. Bus. Res., Inc.</u>, 183 Ariz. 448, 454 (Ct. App. 1995); <u>Ross</u>

<u>v. Lowitz</u>, 222 N.J. 494, 513-14 (2015).  Under Texas, Arizona, and New Jersey law, those who

are merely "incidental beneficiar[ies]" cannot sue for breach.  <u>Araiza</u>, 183 Ariz. at 454; <u>City of</u>

<u>Houston</u>, 353 S.W.3d at 145; <u>Ross</u>, 222 N.J. at 513-14.

The Manual provisions cited by Plaintiffs as the alleged "promises" allocate

responsibilities for student welfare between the NCAA and its member institutions, as discussed

above.  While students might benefit from that division, they are at most incidental—not

intended—beneficiaries, and thus cannot sue for breach.  <u>See</u> <u>Knelman v. Middlebury</u>

<u>Coll.</u>, 898 F. Supp. 2d 697, 715 (D. Vt. 2012), <u>aff'd</u>, 570 F. App'x 66 (2d Cir. 2014) (casting

doubt on the idea that a student was the intended beneficiary of the NCAA Manual's fairness

provisions).  Plaintiffs have not identified any statements "sufficient to support the players' claims

that" the NCAA "intended to assume a direct contractual obligation to every" NCAA athlete.  <u>See</u>

1  Hairston v. Pac. 10 Conference, 101 F.3d 1315, 1320 (9th Cir. 1996), as amended (Dec. 19, 1996)

2  (statements in PAC-10 Constitution and bylaws did not support a third-party beneficiary claim).

3  **H.   Plaintiffs' Claims for Vicarious Tort Liability Fail Because Rembao Was Not the NCAA's Agent**

4

5  **1.   Choice of Law**

6  California's government interest analysis applies to tort claims, including issues involving

7  vicarious liability.  See Arno v. Club Med Inc., 22 F.3d 1464, 1468 (9th Cir. 1994).  For purposes

8  of this Motion and these Plaintiffs, there are no material differences between the relevant

   jurisdiction's laws for vicarious liability, so California law applies.

9  **2.   Respondeat Superior Is Inapplicable Because the Member Institutions, Not the NCAA, Employed and Controlled Rembao**

10

11  Plaintiffs ask this Court to hold the NCAA vicariously liable for Rembao's conduct under

12  theories of respondeat superior and ratification (Counts VIII-XIII).  Both fail against the NCAA.

13  The doctrine of respondeat superior does not allow for "the imposition of liability on a

14  defendant based on the acts of a party with whom it had no agency or employment relationship."

15  Gen. Bldg. Contractors Ass'n, Inc. v. Penn., 458 U.S. 375, 392 (1982); Patterson v. Domino's

16  Pizza, LLC, 60 Cal. 4th 474, 499 (2014).  Plaintiffs do not allege that Rembao was employed by

17  the NCAA.  Instead, they allege that Rembao was employed by UArizona and UT, FAC ¶¶ 28, 30,

18  that he "worked at several other NCAA schools throughout his career," id. ¶ 29, and that he was

19  employed outside the NCAA by USA Track and Field, the Olympic Training Center, and Team

20  USA, id. ¶¶ 35-36.  Plaintiffs thus fail to allege the employment relationship traditionally required

21  for respondeat superior.

22  Nor do Plaintiffs allege the kind of "right to control the manner and means of

23  accomplishing the result desired" required to prove either an employment or another agency

24  relationship.  S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal.3d 341, 350 (1989);

25  Wickham v. Southland Corp., 168 Cal. App. 3d 49, 59 (1985).  To hold the NCAA liable,

26  Plaintiffs must show that, as to Rembao, the NCAA "has retained or assumed a general right of

27  control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-

28  to-day aspects of the workplace behavior."  See Patterson, 60 Cal. 4th at 478.  Plaintiffs'

1   allegations confirm that the member institution—not the NCAA—supervises Rembao's day-to-

2   day conduct.  <u>See, e.g.</u>, FAC ¶ 167 (alleging that UArizona coaches knew or should have known

3   of Rembao's behavior regarding Aldrich); <u>id.</u> ¶¶ 235-236 (alleging that UT conducted an

4   inadequate investigation of Johnson's allegations).  This is insufficient to hold <i>the NCAA</i>, who

5   Plaintiffs do not allege had a right of day-to-day control over Rembao, liable for his conduct.  <u>See</u>

6   <u>Patterson</u>, 60 Cal. 4th at 497 (franchise contract that sets out standards and procedures for

7   franchisee to follow but leaves day-to-day control to the franchisee is not sufficient to impose

8   vicarious liability on the franchisor for the conduct of the franchisee's employee); <u>Barenberg v.</u>

9   <u>Sigma Alpha Epsilon Fraternity</u>, 33 Cal. App. 5th 70, 85 (2019) (national fraternity not vicariously

10  liable for conduct of local fraternity members, even though the national fraternity had post-

11  conduct disciplinary powers, because the national fraternity lacked day-to-day control over the

12  relevant conduct).  Thus, to the extent Plaintiffs contend that Rembao is the NCAA's agent, this

13  allegation is implausible and should not be credited by this court.  <u>See Imageline, Inc. v.</u>

14  <u>CafePress.com, Inc.</u>, No. CV 10-9794 PSG (MANx), 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6,

15  2011) ("To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating

16  the principal's control over its agent.").

### 3.   Respondeat Superior Is Also Inapplicable Because Sexual Abuse Is Outside Rembao's Scope of Employment as a Coach

18
19      Even if Plaintiffs could show Rembao was the NCAA's employee or agent, which they

20  cannot, his alleged conduct was not "committed within the scope of his employment" as a matter

    of law.  <u>John R. v. Oakland Unified Sch. Dist.</u>, 48 Cal. 3d 438, 447 (1989) (citation omitted).
21

22      California cases have held that "except where sexual misconduct by on-duty police officers

23  against members of the public is involved . . . , the employer is not vicariously liable to the third

    party for such misconduct."  <u>See Farmers Ins. Grp. v. Cty. of Santa Clara</u>, 11 Cal. 4th 992, 1006
24
    (1995).  Courts consistently have held that an employee's taking advantage of a professional
25
26  position of trust to commit a sexual assault does not place that assault within the employee's scope

27  of employment.  <u>See John R.</u>, 48 Cal. 3d at 449 (school not liable for teacher's sexual abuse of

28  student even where "[t]he teacher told [the student] that sexual conduct was part of a teacher-

1   student relationship and was intended to help [the student] with his problems"); Lisa M. v. Henry

2   Mayo Newhall Mem'l Hosp., 12 Cal. 4th 291, 301 (1995) (hospital not liable for sexual

3   molestation by a technician during an examination, as the technician "took advantage of" a

4   vulnerable situation "to commit an assault for reasons unrelated to his work," even though his

5   employment was what made the assault possible).  Rembao's alleged sexual abuse of Plaintiffs

6   might have been made possible by his employment as a coach, but was entirely unrelated to his

7   coaching duties and therefore was outside the scope of his employment.

8                    **4.    Plaintiffs' Ratification Theory Fails**

9         Ratification is "the voluntary election by a person to adopt in some manner as his own an

10   act which was purportedly done on his behalf by another person."  Rakestraw v. Rodrigues, 8 Cal.

11   3d 67, 73 (1972).  However, like vicarious liability, ratification is not a cause of action but rather

12   is simply a means by which to hold a principal liable for an agent's torts.  See Baptist v. Robinson,

13   143 Cal. App. 4th 151, 169 (2006) (describing ratification as an alternate theory to vicarious

14   liability).  Plaintiffs' ratification allegations fail for two additional reasons.

15         *First*, Plaintiffs fail to plausibly allege a relationship between the NCAA and Rembao that

16   would allow this Court to find that the NCAA ratified Rembao's conduct.  Ratification requires, at

17   the time of the unauthorized act, "a relationship, either actual or assumed, of principal and agent,

18   between the person alleged to have ratified and the person by whom the unauthorized act was

19   done."  See Anderson v. Fay Imp. Co., 134 Cal. App. 2d 738, 748 (1955).  As discussed above,

20   there was no actual agency relationship between the NCAA and Rembao.  Nor was there an

21   assumed agency relationship because Plaintiffs do not allege that *in committing the alleged sexual*

22   *abuse*, Rembao purported to act on the NCAA's behalf, or that they had reason to believe that

23   Rembao was the NCAA's agent.  See Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 961–

24   62 (2002) ("A principal cannot ratify the act of the alleged agent, unless the 'agent' purported to

25   act on behalf of the principal.").  That Rembao might have been incidentally associated with the

26   NCAA while acting as a coach does not suffice to create such a relationship.  See id. (display of a

27   logo was "simply not enough to establish an agency by ratification").

28         *Second*, Plaintiffs fail to allege that the NCAA knew of Rembao's alleged conduct, which

                                                    -29-                        Case No. 5:20-cv-01733-EJD

1   is required to show ratification.  See Cruz v. HomeBase, 83 Cal. App. 4th 160, 168 (2000) ("A

2   corporation cannot confirm and accept that which it does not actually know about."); Baptist, 143

3   Cal. App. 4th at 169.  Here, Plaintiffs make a single, conclusory allegation of the NCAA's

4   knowledge.  See FAC ¶ 479 (alleging knowledge of Rembao's misconduct "by the NCAA and/or

5   its agents…").  As noted, the use of "and/or" suggests Plaintiffs do not have a basis for this

6   allegation.  Nowhere do they allege who informed the NCAA about Rembao's conduct, when, or

7   how, nor do they identify whom the informant told or the basis for considering that person an

8   agent of the NCAA.  Such a "[t]hreadbare recital[]" of knowledge, "supported by mere conclusory

9   statements," Iqbal, 556 U.S. at 678, is insufficient and the Court should disregard it.  See, e.g.,

10   Wistron Corp. v. Phillip M. Adams & Assocs., LLC, No. C-10-4458 EMC, 2011 WL 4079231, at

11   *5 (N.D. Cal. Sept. 12, 2011) (in a patent case, noting that "[p]ost-Twombly and Iqbal, courts have

12   typically rejected conclusory allegations of knowledge").  Nor can UT's knowledge of Rembao's

13   misconduct be attributed to the NCAA.  See Barenborg, 33 Cal. App. 5th at 85 (absent day-to-day

14   control, actions of local fraternity and its members could not be attributed to national fraternity

15   under agency theory).  Plaintiffs' ratification theory therefore fails.  See Ortiz v. Georgia Pac., 973

16   F. Supp. 2d 1162, 1186 (E.D. Cal. 2013) (under California law, an employer who "did not have

17   knowledge of the details of [an employee's] conduct . . .  therefore could not possibly ratify any . .

18   . conduct in which she may have engaged"); Walsh v. Kindred Healthcare, 798 F. Supp. 2d 1073,

19   1084 n.5 (N.D. Cal. 2011) (allegation that defendants were "acting with the express or implied

20   knowledge, consent, authorization, approval, and/or ratification of their co-defendants" too

21   conclusory for motion to dismiss).  Plaintiffs' claims for battery, assault, false imprisonment,

22   intentional and negligent infliction of emotional distress, and "ratification" should be dismissed.

23   DATED:  July 27, 2020                              MUNGER, TOLLES & OLSON LLP

24                                                                  By:  /s/ Carolyn Hoecker Luedtke

25                                                                  CAROLYN HOECKER LUEDTKE
                                                                     Attorneys for Defendants The National Collegiate
26                                                                  Athletic Association and The Board of Governors of
                                                                     the National Collegiate Athletic Association
27

28